1    **UNITED STATES BANKRUPTCY COURT**

2    **EASTERN DISTRICT OF CALIFORNIA**

3    In re:                          )        Case No. 19-27357-B-7
                                     )
4    CLAY DUDLEY,                    )        DC No. MOH-14
                                     )
5                                    )
                        Debtor(s).   )
6    _____)

7

8    **MEMORANDUM AND ORDER REGARDING DEBTOR'S REQUEST FOR EXTENSION OF STATUTORY HOMESTEAD PROCEEDS REINVESTMENT PERIOD**

9    <u>Introduction</u>

10   The court has before it a *Debtor's Motion for Additional

11   Time to Purchase New Residential Homestead* filed by debtor Clay

12   Dudley.  The debtor requests an extension of the time under

13   California law within which proceeds from the sale of property

14   claimed as a homestead must be reinvested in a replacement

15   homestead property in order to preserve the exempt status of the

16   sale proceeds.

17   The hearing on the debtor's motion was continued from April

18   28, 2020, to May 19, 2020, and the debtor was instructed to

19   submit additional points and authorities in support of his

20   request.  The chapter 7 trustee and other parties in interest

21   were also invited to address the debtor's request.  The debtor

22   timely submitted an additional brief.  The chapter 7 trustee

23   filed a late response.  No other party in interest opposed or

24   responded to the motion.

25   The court has reviewed the motion, the trustee's response,

26   and all related declarations and exhibits.  The court has also

27   reviewed and takes judicial notice of the docket in this chapter

28   7 case.  <u>See</u> Fed. R. Evid. 201(c)(1).

1     The court has determined this matter may be decided on the
2 papers. <u>See</u> General Order No. 618 at p.3, ¶ 3 (E.D. Cal. May 13,
3 2020) (ordering courthouse closure "until further notice" due
4 COVID-19 pandemic and further ordering that all civil matters are
5 to be decided on the papers unless the presiding judge determines
6 a hearing is necessary).  Oral argument will not assist in the
7 decision-making process or resolution of the motion.  <u>See</u> Local
8 Bankr. R. 9014-1(h), 1001-1(f).  The hearing on May 19, 2020, at
9 9:30 a.m. will be vacated.

10     Findings of fact and conclusions of law are set forth below.
11 <u>See</u> Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052.

12

13 <u>Background</u>

14     The debtor is 57 years old.  The Social Security
15 Administration has determined that the debtor is disabled.

16     The debtor filed a chapter 7 petition on November 26, 2019.
17 He received a discharge on March 19, 2020.

18     In Schedule C filed with the petition, the debtor claimed
19 the $175,000.00 homestead exemption amount in his residence at
20 432 Weymouth Way, Chico, California ("Homestead Property")
21 permitted by California Code of Civil Procedure § 704.730.  No
22 party in interest objected to the claim of exemption.

23     The Homestead Property was abandoned to the debtor without
24 objection on December 19, 2019, and the debtor sold it shortly
25 thereafter.  Escrow on the sale closed on February 7, 2020.  The
26 debtor received $112,102.34 in sale proceeds ("Homestead
27 Proceeds").

28     The Homestead Proceeds currently enjoy the same exempt

1  status as the Homestead Property.  However, according to the

2  debtor, the Homestead Proceeds will lose their exempt status if

3  they are not reinvested in a replacement homestead within six

4  months of the time they were received, or by August 5, 2020.

5      The debtor states that he intends to use the Homestead

6  Proceeds to purchase a replacement homestead property and he has

7  been diligent in efforts to timely do so.  The debtor also states

8  that his efforts have been hampered by a loss of liquidity in the

9  mortgage market based on the type of loan for which he currently

10 qualifies.  And in the midst of the debtor's efforts to timely

11 reinvest the Homestead Proceeds, the COVID-19 pandemic happened.

12     The COVID-19 pandemic has effectively shut commerce, closed

13 businesses and schools, eliminated employment, substantially

14 changed daily life at the local, state, and national levels, and

15 generally limited products and services to those deemed necessary

16 or essential.  Id.  As one court aptly described current

17 conditions:

18     Meanwhile, the world is in the midst of a global
       pandemic.  The President has declared a national
19     emergency.  The Governor has issued a state-wide health
       emergency.  As things stand, the government has forced
20     all restaurants and bars [] to shut their doors, and
       the schools are closed, too.  The government has
21     encouraged everyone to stay home, to keep infections to
       a minimum and help contain the fast-developing public
22     health emergency.

23 Art Ask Agency v. Individuals, Corporations, et al., 2020 WL

24 1427085, *1 (N.D. Ill. 2020).

25     In response to the COVID-19 pandemic, California Governor

26 Gavin Newsom issued a Proclamation of a State of Emergency on

27

28

                                - 3 -

1   March 4, 2020.[1]  Two weeks later, on March 19, 2020, Governor

2   Newsom issued Executive Order N-33-20, a state-wide "stay at home

3   order" that directs all individuals living or residing in the

4   State of California to stay home or at their place of residence

5   except as necessary to obtain essential services or for essential

6   operations.[2]  The California Public Health Officer thereafter

7   published a list of essential functions covered by the Governor's

8   Executive Order.[3]  The Public Health Officer's list designates

9   real estate workers as critical, to the extent remote working is

10  not possible; however, it also limits scheduled property viewings

11  to a single potential buyer and prohibits open-house viewings.

12  Id. at p.23, ¶ 12.

13       The debtor states that the limited availability of mortgage

14  loan funds and restrictions placed on access to real property

15  have substantially and adversely affected his ability to timely

16  locate, view, inspect, and close on a replacement homestead.  In

17  other words, according to the debtor, conditions created by the

18  COVID-19 pandemic and the current state of emergency have

19  substantially and adversely affected his ability to timely

20

21       [1]As of the date of this order, the Proclamation of a State
    of Emergency may be found online at:
22  https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.4.20-Coronavir
23  us-SOE-Proclamation.pdf

24       [2]As of the date of this order, the Executive Order may be
    found online at:
25  https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf

26       [3]As of the date of this order, the list of Essential
27  Critical Infrastructure Workers may be found online at:
    https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers
28  .pdf

- 4 -

1 reinvest the Homestead Proceeds.

2

3 <u>Discussion</u>

4      As an initial matter, the court notes that the trustee does

5 not dispute any of the facts stated in or associated with the

6 debtor's motion.  The trustee also does not oppose the debtor's

7 request for an extension of the time to reinvest the Homestead

8 Proceeds.  And the trustee acknowledges that the Homestead

9 Property was abandoned without opposition, concedes that the

10 estate generally does not have an interest in abandoned property,

11 states that the decision to not oppose abandonment was based on a

12 mistaken belief that the estate retained a reversionary interest

13 in the Homestead Proceeds if not timely reinvested, and suggests

14 that the abandonment order should be vacated under Federal Rule

15 of Civil Procedure 60(b)(1) (applicable by Federal Rule of

16 Bankruptcy Procedure 9024) based on the trustee's mistaken

17 belief.

18      The trustee's request to vacate the abandonment order will

19 be denied without prejudice.  The trustee's response to the

20 debtor's motion is not a properly filed, set, and served motion.

21 Moreover, Civil Rule 60(b)(1) does not provide relief for

22 litigation decisions made by a party which the party later

23 regrets based on subsequently-acquired knowledge.  <u>See</u> <u>Latshaw v.</u>

24 <u>Trainer Wortham & Co., Inc.</u>, 452 F.3d 1097, 1100-01 (9th Cir.

25 2006); <u>Adams v. Ziebarth (In re Adams)</u>, 2019 WL 6463992, *4 (9th

26 Cir. BAP 2019); <u>Lowery v. Hart</u>, 2016 WL 900286, *5 (E.D. Cal.

27 2016).  To the extent there may be a basis for relief from the

28 abandonment order, if at all, it is not under Civil Rule 60(b)(1)

based on the trustee's mistaken belief.

Now to the debtor's request for an extension. The court notes that the debtor has identified the amount of the homestead but not the nature of the homestead or the statutory basis of the obligation to reinvest the Homestead Proceeds. The court's briefing order refers to § 704.720(b) of the California Code of Civil Procedure as an example of the six-month reinvestment obligation.[4] However, since the debtor sold the Homestead Property after it was abandoned and because the debtor refers to a six-month period that runs from receipt of the Homestead Proceeds and when the sale of the Homestead Property closed, it may be that the six-month reinvestment period arises under § 704.960 of the California Code of Civil Procedure.[5] Under the

---

[4]California Code of Civil Procedure § 704.720(b) states as follows:
> (b) If a homestead is sold under this division or is damaged or destroyed or is acquired for public use, the proceeds of sale or of insurance or other indemnification for damage or destruction of the homestead or the proceeds received as compensation for a homestead acquired for public use are exempt in the amount of the homestead exemption provided in Section 704.730. The proceeds are exempt for a period of six months after the time the proceeds are actually received by the judgment debtor, except that, if a homestead exemption is applied to other property of the judgment debtor or the judgment debtor's spouse during that period, the proceeds thereafter are not exempt.

[5]California Code of Civil Procedure § 704.960 states as follows:
> (a) If a declared homestead is voluntarily sold, the proceeds of sale are exempt in the amount provided by Section 704.730 for a period of six months after the date of sale.
> (b) If the proceeds of a declared homestead are

- 6 -

former the six-month period runs from the date proceeds are actually received whereas under the latter the six-month period runs from the date of sale.

For present purposes the distinction between § 704.720(b) and § 704.960 appears to be one without a difference. The relevant question is not *when* the six-month reinvestment period begins to run. The debtor acknowledges that it is currently running. Rather, the relevant question here is whether the six-month reinvestment period can be extended or otherwise tolled once it has started to run. And as noted below, that question applies equally to the six-month period under either statute.

Generally, when a debtor files bankruptcy, all of the debtor's property becomes property of the bankruptcy estate. <u>See</u> 11 U.S.C. § 541. Federal law provides avenues for a debtor to exempt certain property. <u>See</u> 11 U.S.C. § 522(d). Congress has also authorized states to opt out of the federal bankruptcy exemptions created by Bankruptcy Code § 522(d) which means the federal exemption scheme can be supplanted by states that choose to provide their own exemptions. <u>See</u> 11 U.S.C. § 522(b)(2); <u>Granger v. Watson (In re Granger)</u>, 754 F.2d 1490, 1492 (9th Cir. 1985) ("[A] state that has opted out has considerable freedom in

invested in a new dwelling within six months after the date of a voluntary sale or within six months after proceeds of an execution sale or of insurance or other indemnification for damage or destruction are received, the new dwelling may be selected as a declared homestead by recording a homestead declaration within the applicable six-month period. In such case, the homestead declaration has the same effect as if it had been recorded at the time the prior homestead declaration was recorded.

creating exemptions and eligibility requirements for those exemptions."). California exercised the § 522(b)(2) option to opt out by making the federal bankruptcy exemptions inapplicable in the state. See C.C.C.P. § 703.130.[6]

A bankruptcy court construing California exemptions applies a state-law rule of decision. In re Tallerico, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015). In other words, "[l]ike all federal courts when addressing a state-law rule of decision, the bankruptcy court is predicting what the California Supreme Court would rule if it were presented with the question." Id. In that endeavor, state law governs. Law v. Siegel, 134 S. Ct. 1188, 1196-97 (2014) ("when a debtor claims a state-created exemption, the exemption's scope is determined by state law"); Philips v. Gilman (In re Gilman), 887 F.3d 956, 964 (9th Cir. 2018); Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012). State law includes state statutory law. Elliott v. Weil (In re Elliott), 523 B.R. 188, 194 (9th Cir. BAP 2014); Kornhauser v. Block (In re Block), 2016 WL 3251406, *3 (9th Cir. BAP 2016). And it includes state equitable law. Gilman, 887 F.3d at 966 (citing (Gray v. Warfield (In re Gray), 523 B.R. 170, 175 (9th Cir. BAP 2014)).

The debtor has not cited any California statute that would

---

[6]California Code of Civil Procedure § 703.130 states as follows:
    Pursuant to the authority of paragraph (2) of
    subsection (b) of Section 522 of Title 11 of the United
    States Code, the exemptions set forth in subsection (d)
    of Section 522 of Title 11 of the United States Code
    (Bankruptcy) are not authorized in this state.

permit the court to extend or toll the six-month reinvestment period under § 704.720(b) or § 704.960.  The court has also found none.  So that leaves California equitable law.

California's six-month reinvestment period has been equitably tolled when, through no fault of their own, exemption claimants lacked possession of or control over homestead proceeds following an involuntary or voluntary sale of the homestead and, as a result, were unable to timely reinvest the proceeds.  <u>Chase v. Bank of America, Nat. Trust & Sav. Ass'n</u>, 227 Cal. App. 2d 259 (1964) (involuntary sale); <u>Thorsby v. Babcock</u>, 36 Cal. 2d 202 (1950) (voluntary sale); <u>see also</u> <u>Gill v. Woodburn</u>, Adv. No. 12-02035-RK, at pp. 19-20 (Bankr. C.D. Cal. 2012) (involuntary sale but relying on <u>Chase</u> and <u>Thorsby</u> to conclude that the debtor's lack of possession of homestead proceeds tolled six-month period).  Bankruptcy courts construing similar reinvestment obligations under other states' homestead statutes have reached similar conclusions.  <u>In re Dinh</u>, 562 B.R. 122, 133-34 (Bankr. S.D. Tex. 2016); <u>In re Marriott</u>, 427 B.R. 887, 894-95 (Bankr. D. Idaho 2010).

The reinvestment period has also been equitably tolled when the debtor receives homestead proceeds following a voluntary sale of the homestead but, again, circumstances beyond the debtor's control prevent the timely reinvestment of the proceeds.  <u>In re Bading</u>, 376 B.R. 143 (Bankr. W.D. Tex. 2007).  In <u>Bading</u>, a debtor's homestead consisted of two contiguous parcels.  A creditor refused to release an improper lien on one parcel which resulted in the debtor selling her homestead in consecutive transactions.  The debtor sold the first parcel and when she

- 9 -

1  eventually obtained a release of the improper lien she sold the

2  second parcel.  Had the reinvestment period not been tolled as to

3  the proceeds from the sale of the first parcel the debtor would

4  have lost her exemption while she was attempting to sell the

5  second parcel.  Nevertheless, the court held that the time under

6  state law within which the debtor was required to reinvest the

7  proceeds of the first sale was tolled until the sale of both

8  parcels was completed.  The court explained that the running of

9  the reinvestment period would have "deprived [the debtor] of the

10 opportunity to enjoy the full benefits of the homestead

11 guaranteed to her under the Texas Constitution."  Id. at 153.

12     Each of these decisions recognize the core principle that

13 "[c]ourts liberally construe 'the law and facts to promote the

14 beneficial purposes of the homestead legislation to benefit the

15 debtor.'"  Gilman, 887 F.3d at 964 (quoting Tarlesson v. Broadway

16 Foreclosure Invs., LLC, 184 Cal. App. 4th 931, 936 (2010)).

17 Indeed, "California intended a liberal homestead statute so its

18 citizens would not lose their homes through a technicality."

19 Canino v. Bleau (In re Canino), 185 B.R. 584, 590 (9th Cir. BAP

20 1995).  In that regard, an exemption in homestead proceeds should

21 not be lost so long as the proceeds are not squandered or used

22 for nonexempt purposes.  See Jacobson, 676 F.3d at 1200.

23     Nothing in the record before the court suggests that the

24 debtor intends to squander the Homestead Proceeds or otherwise

25 use them improperly or for a nonexempt purpose.  Indeed, the

26 record suggests quite the opposite.  The debtor states that he

27 intends to reinvest the Homestead Proceeds in another homestead

28 but he is unable to do so because of circumstances created by the

COVID-19 pandemic and the current state of emergency.  In this court's view, that is an equitable basis to toll the debtor's six-month reinvestment period consistent with California law and its COVID-19 pandemic policy.

In normal times six months to locate and close on a replacement homestead property to avoid a loss of the exemption is challenging enough.  <u>See</u> <u>Jacobson</u>, 676 F.3d at 1198-99 (involuntary sale); <u>England v. Golden (In re Golden)</u>, 789 F.2d 698, 699 (9th Cir. 1986) (voluntary sale).  However, because of the COVID-19 pandemic and current state of emergency, and in recognition that the State of California has taken a number of measures to protect occupancy and ownership of residences and the family home, these are not normal times.

On March 16, 2020, Governor Newsom issued Executive Order N-28-20 which allows local governments to impose limits on commercial and residential evictions through at least May 31, 2020.[7]  The Executive Order states that limits on evictions may be imposed when the basis for the eviction is nonpayment of rent due to a substantial decrease in household or business income caused by the COVID-19 pandemic or any government response to it.

On March 25, 2020, Governor Newsom announced during a press conference that, in response to efforts by the State of California and in recognition of the circumstances created by the COVID-19 pandemic, some of the nations largest lenders along with

---

[7]As of the date of this order, the Executive Order may be found online at:
https://www.gov.ca.gov/wp-content/uploads/2020/03/3.16.20-Executive-Order.pdf

- 11 -

hundreds of other smaller financial institutions, banks, and credit unions, voluntarily agreed to a 90-day grace period on mortgage payments for California residents.[8]

Two days later, on March 27, 2020, Governor Newsom issued Executive Order N-37-20 which prohibits enforcement of eviction orders for nonpayment of residential rent by tenants affected by COVID-19 through May 31, 2020.[9]  It also extends the deadline in California Code of Civil Procedure § 1167 for a period of 60 days for any tenant who, while the order is in effect, is served with a complaint to evict the tenant from a residence or dwelling for nonpayment of rent and who satisfies certain requirements.

On April 6, 2020, the Judicial Council adopted emergency rules that will remain in effect until 90 days afer the Governor lifts the state of emergency related to the COVID-19 pandemic or until they are amended or repealed by the Judicial Council.[10] Emergency Rule No. 1 of the Emergency Rules of California Rules

---

[8]As of the date of this order, the announcement may be found online at:
https://www.gov.ca.gov/2020/03/25/governor-gavin-newsom-announces-major-financial-relief-package-90-day-mortgage-payment-relief-during-covid-19-crisis/;
https://www.rev.com/blog/transcripts/california-governor-coronavirus-briefing-transcript-march-25;
https://www.c-span.org/video/?470703-1/california-governor-newsom-coronavirus-news-conference.

[9]As of the date of this order, the Executive Order may be found online at:
https://www.gov.ca.gov/wp-content/uploads/2020/03/3.27.20-EO-N-37-20.pdf

[10]As of the date of this order, the Emergency Rules Related to COVID-19 may be found online at:
https://www.courts.ca.gov/documents/appendix-i.pdf

of Court suspends evictions, other than those necessary to
protect public health.  It also prohibits state courts from
issuing summons, entering of default judgments due to a tenant's
lack of response, limits trial settings where the tenant has
responded or appears, and continues trials.  Emergency Rule No. 2
of the Emergency Rules of California Rules of Court effectively
stays judicial foreclosures, other than those necessary to
protect public health.  It also tolls deadlines for filing
judicial foreclosures and extends the period for exercising any
rights in a judicial foreclosure case, including any right of
redemption or a petition in relation to such right.

The California Assembly took similar action on April 8,
2020, with the introduction of Assembly Bill 828.[11]  Assembly Bill
828 effectively prohibits all aspects of all foreclosures on
residential real property while there is a state or locally
declared state of emergency related to the COVID-19 pandemic in
the jurisdiction in which the residential real property is
located and until 15 days after the state or locally declared
state of emergency ends.

Further protections for property owners came on May 6, 2020,
when Governor Newsom issued Executive Order N-61-20 suspending
until May 6, 2021, penalties, costs, or interest for failure to

---

[11]As of the date of this order, Assembly Bill 828 may be
found online at:
https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bil
l_id=201920200AB828

1  file property taxes timely.[12]

2      Each of the above-described actions taken by the State of
3  California reflect a public policy and legislative effort to
4  protect real property interests, generally, and, specifically, to
5  prevent the loss of residential occupancy and ownership rights
6  due to the COVID-19 pandemic and the resulting state of emergency
7  both of which are circumstances beyond the control of any
8  adversely affected occupant, tenant, or homeowner.  There is no
9  good reason why that policy should not apply equally to the
10  Homestead Proceeds.  In other words, because the COVID-19
11  pandemic and the current state of emergency have significantly
12  hindered the debtor's ability to timely reinvest the Homestead
13  Proceeds the debtor's possession of the exempt proceeds and his
14  ability to use them for their intended purpose should be
15  protected to the same extent and by the same measures the State
16  of California has adopted to prevent those in possession of
17  residential real property from losing occupancy, leasehold, and
18  ownership rights.  The court therefore holds that under the facts
19  of this case, the six-month reinvestment period applicable to the
20  Homestead Proceeds is and shall be equitably tolled in the manner
21  described below.

22      Tolling of the debtor's six-month reinvestment period began
23  with the March 4, 2020, Proclamation of a State of Emergency.
24  Tolling of the six-month reinvestment period will end on

25

26      [12]As of the date of this order, the Executive Order may be
27  found at
   https://www.gov.ca.gov/wp-content/uploads/2020/05/5.6.20-EO-N-61-
28  20-text.pdf

September 4, 2020, or when the March 4, 2020, state of emergency is terminated, whichever occurs first.  Based on the debtor's statement that he received the Homestead Proceeds when escrow closed on February 7, 2020, that means 26 days of the six-month reinvestment period have run.  The remaining 154 days (based on a 180-day period) will begin to run from the date of whichever event stated immediately above occurs first.

Conclusion

    For the foregoing reasons, and good cause appearing,

    IT IS ORDERED that the debtor's motion is granted.

    IT IS FURTHER ORDERED that the trustee's request to vacate the order abandoning the Homestead Property to the debtor is denied without prejudice.

    IT IS FURTHER ORDERED that the hearing on May 19, 2020, at 9:30 a.m. is vacated.

**Dated:** May 18, 2020

                                    Christopher D. Jaime, Judge
                                    **United States Bankruptcy Court**

- 15 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Michael O'Dowd Hays
676 E 1st Ave #5
Chico CA 95926

J. Russell Cunningham
Desmond, Nolan, Livaich & Cunningham
1830 15th Street
Sacramento, CA 95811